Robert "Bob" TILTON, Individually and [Sued as Allegedly] d/b/a Robert Tilton Ministries, Word of Faith World Outreach Center Church, Inc. (a Dissolved Corporation), and Word of Faith World Outreach Center Church, et al.

v.

The Honorable Eric V. MOYÉ, Judge.

No. D–3902.

Supreme Court of Texas.

Argued Jan. 20, 1994.

Decided Feb. 2, 1994.

John B. Kronenberger, Belinda A. Vrielink, Dallas, C.L. Ray, Austin, John L. Ross, Dallas and Rhonda Johnson Byrd, Dallas, for relator.

C. Tony Wright, Dallas, for respondent.

ON PETITION FOR WRIT OF MANDAMUS

Justice SPECTOR delivered the opinion of the Court, in which all Justices join.

The Relators in this mandamus proceeding complain of a trial court order requiring production of documents in response to two separate discovery requests. As to both discovery requests, we conclude that the trial court abused its discretion in ordering production.

In the underlying suit, Norma Smith asserts claims against Robert "Bob" Tilton and the religious organization he heads, the Word of Faith World Outreach Center Church. According to Tilton, his religious beliefs, and those of the Church and its members, are

centered upon "the importance and necessity of tithing and making religious vows to the Church." The Church is also dedicated to belief in "the divine healing of physical ailments and infirmities through spiritual faith."

Smith alleges that she and her husband became "faithful followers and contributors" to Tilton as a result of promises he made relating to religious healing and cures. After her husband died from an extended illness in October 1990, Smith received by mail a brochure and two subsequent bills soliciting money from her husband, causing her severe emotional distress. Smith initially asserted several distinct causes of action, but the trial court has since granted summary judgment as to all but Smith's claims based on intentional and negligent infliction of emotional distress.

The present dispute relates to two requests contained in a subpoena duces tecum that Smith served on Tilton and the Church (collectively "Tilton") in August 1992.[1] In one of these, Request Number 4, Smith sought the following:

> Records (medical or otherwise) that reveal the identity, address, and telephone numbers of any and all persons who have claimed to have been healed of medical illnesses and/or physical abnormalities during the past five (5) years.

The trial court overruled Tilton's various objections to this request, and ordered production of the requested documents "restricted to a period of two years prior to the filing of this action, to date."

Tilton's principal complaint regarding the trial court's order is that it violates the right of freedom of association under the First Amendment to the United States Constitution.[2] We agree.

The First Amendment requires that a compelling state interest be shown before a court may order disclosure of membership in an organization engaged in advocacy of particular beliefs. *NAACP v. Alabama*, 357 U.S. 449, 462–63, 78 S.Ct. 1163, 1171–72, 2 L.Ed.2d 1488 (1958). "[I]t is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *Id.* at 460–61, 78 S.Ct. at 1171.

Like a request for membership lists, the request in this case is specifically aimed at persons sharing particular beliefs: namely, it seeks the identities of those individuals who subscribe to the religious beliefs that Tilton espouses. At oral argument, counsel for Smith indicated his desire to contact these individuals for further discovery; and he acknowledged that once identified, individuals who decline to cooperate voluntarily could be subpoenaed for questioning.

To justify this exposure, Smith emphasizes the general purpose of discovery: to allow the parties to obtain full knowledge of the issues and facts prior to trial. While we have recognized the importance of open discovery, *see generally West v. Solito*, 563 S.W.2d 240, 243 (Tex.1978), we do not believe that policy supports the trial court's order in this case. The interest of open discovery might justify the disclosure of narrow, limited groups of individuals, such as those who have made similar complaints regarding the defendant; but in the absence of a more particularized showing of need, it does not justify the disclosure of individuals' identities based on their religious beliefs. *Cf. Word of Faith World Outreach Center Church, Inc. v. Morales*, 986 F.2d 962, 967 (5th Cir.1993) (calling demand for church's membership and/or contributor lists "an obvious infringe-

---

1. Tilton initially challenged three other requests in addition to the two presently at issue. After this Court declined to extend temporary relief as to those three requests, Tilton filed an emergency motion for severance to facilitate review by the United States Supreme Court. This Court granted the motion for severance and overruled Tilton's motion for leave to file in regard to those three requests.

2. Tilton's petition also mentions Article I, section 6 of the Texas Constitution, which protects freedom of worship; but his briefing focuses solely on the First Amendment of the United States Constitution. Consequently, we do not consider the extent to which Article I, section 6 provides an independent basis for the protection of Tilton's rights.

ment of the First Amendment associational right announced in *NAACP v. Alabama* ").

Smith asserts that by espousing their beliefs in healing, the members of Tilton's organization have waived their constitutional rights.[3] She further argues, on the basis of *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), that the trial court has adequately protected any remaining right to privacy by issuing a "Confidentiality Order" requiring Smith to safeguard information obtained from Tilton. We disagree. In *Rhinehart*, the leader of a religious organization sought affirmative relief, including damages for loss of the organization's membership, based on allegedly defamatory publications. The trial court issued a protective order restricting dissemination of information obtained in discovery, reasoning that dissemination would have a "chilling effect" on "a party's willingness to bring his case to court." 467 U.S. at 27, 104 S.Ct. at 2204. The Supreme Court of Washington upheld the protective order against the defendant's First Amendment challenge. 98 Wash.2d 226, 654 P.2d 673 (1982). The U.S. Supreme Court likewise upheld the order, noting the importance of "ensuring that potential litigants have unimpeded access to the courts." 467 U.S. at 36 n. 22, 104 S.Ct. at 2209 n. 22. Because Tilton is not seeking affirmative relief, *Rhinehart* is distinguishable. *Cf. Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105 (Tex.1985) (quoting *Pavlinko v. Yale-New Haven Hosp.*, 192 Conn. 138, 470 A.2d 246, 251 (1984)).[4] Neither Tilton nor the members of his organization can be said to have waived their constitutional rights merely by espousing their religious beliefs.

■ Smith also asserts that this petition for writ of mandamus should be dismissed because Tilton has failed to provide a record from two hearings in which the trial court considered Smith's motion to compel. The order at issue, however, indicates that the trial court's consideration of the motion to compel was based only on the argument of counsel. Additionally, at oral argument, counsel for Smith conceded that the trial court took no testimony at the hearings. Thus, no statement of facts is necessary; "[t]his court has never required the parties to present a 'statement of facts' that contains only the oration of counsel." *Barnes v. Whittington*, 751 S.W.2d 493, 495 (Tex.1988).

■ In the other request at issue, Request Number 12(d), Smith sought a memo sent by J.C. Joyce, Tilton's Oklahoma counsel, to Martha Tilton, Tilton's wife and an employee of Tilton's organization. A draft of the memo sought was recovered from a public trash bin outside of Joyce's offices by a nonparty whom Smith describes as "a self-appointed 'Televangelist Watchdog.'" The trial court ordered production of the document over Tilton's objections, which were based on relevance and the attorney-client privilege.

Tilton argues that the disposal of the draft memo did not waive the attorney-client privilege as to that item, and certainly did not waive any privileges applicable to the later draft sent to Martha Tilton. Because the latter argument depends upon a comparison of the document requested and the draft memo, the trial court was obligated to review the requested document in camera before ordering production. *See Weisel Enters., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex.1986). To the extent that the requested document is substantively different from the draft memo, the trial court must determine the applicability of the attorney-client privilege based upon the document itself. *Id.* To the extent that it is substantively the same as the draft memo, Tilton is entitled to an opportunity to establish that the disclosure of the draft memo was involuntary. *See* TEX.R.CIV. EVID. 511; *see also Granada Corp. v. First*

---

3. In her response brief, Smith also challenged the premise that enforcement of the trial court's order would constitute state action. *See generally New York Times v. Sullivan*, 376 U.S. 254, 265, 84 S.Ct. 710, 718, 11 L.Ed.2d 686 (1964). At oral argument, however, Smith's counsel took the position that the records sought implicate constitutional rights except to the extent that those rights have been waived.

4. "A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action."

*Court of Appeals,* 844 S.W.2d 223, 226 (Tex. 1992).

We hold that the trial court abused its discretion by ordering production of the documents at issue, and that Tilton has no adequate remedy by appeal. *See Walker v. Packer,* 827 S.W.2d 833, 843 (Tex.1992). Accordingly, we conditionally grant mandamus relief. The writ will issue only if the trial court fails to vacate that portion of its order requiring compliance with Requests 4 and 12(d).