TEXAS WORKERS' COMPENSATION
INSURANCE FUND, Appellant,

v.

TEXAS EMPLOYMENT COMMISSION
and Imelda Martinez, Appellees.

No. 13–95–295–CV.

Court of Appeals of Texas,
Corpus Christi.

Jan. 23, 1997.

---

Kim E. Brightwell, Vinson & Elkins, Austin, for appellant.

Gregory Keith Zaney, Dan Morales, Attorney General, Jorge Vega, First Asst. Attorney General, Laquita A. Hamilton, Deputy Attorney General for Litigation, Thomas J. Meaney, Asst. Attorney General, Chief, Taxation Division, M. Lucinda Glover, Assistant Attorney General, Austin, for appellee.

Before DORSEY, CHAVEZ and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

In a suit to contest the Texas Employment Commission's ("TEC") award of severance pay to a Texas Workers' Compensation Insurance Fund ("Fund") employee, the Fund appeals the granting of the TEC's motion for summary judgment. We affirm.

## BACKGROUND

Imelda Martinez was hired by the Fund as Vice President of Fraud Investigations. In 1994, Martinez was terminated. In the meeting notifying her of the termination, Martinez was provided with a Termination Memorandum, from Karen Chadwell, Vice President of Financial Services, which provided for severance pay as follows:

> You will receive 3 months severance package contingent upon your returning any and all equipment and documents related to the Texas Workers' Compensation Insurance Fund.

The memo does not mention or make reference to any other agreements or conditions between the parties. Martinez was subsequently verbally informed, by Karen Chadwell, Vice President of Human Resources, that the severance pay would be further conditioned upon her completion and return of a "Full and Complete Settlement and Release Agreement" ("Release"), which was attached to the Termination Memorandum. The release agreement provides, in relevant part, that

- The Fund agreed to pay Martinez $17,578.44 as severance pay.

- In consideration of the severance pay, Martinez would agree to release the Fund and its agents, employees, assigns, successors, or other associated persons from any and all liability or claims of any kind or character whatsoever arising out of her employment or termination.

- The release included claims for employment discrimination based upon race, color, age, or sex; claims for wrongful termination or claims for employment benefits of any kind; claims for personal injury, medical expenses, mental anguish, pain and suffering, loss of income, loss of consortium, property damage, lost profits, damage to reputation, or any kind of economic harm.

- Martinez was to hold in confidence any proprietary information, trade secrets or other confidential information.

- Martinez was to return any and all documents and equipment belonging the Fund, and failing to do so, should surrender any consideration provided to her under the release.

In its motion for summary judgment, the Fund presented the affidavit of Denise Houser stating that she completed the meeting with Martinez and discussed the severance package and release. Houser indicated that Martinez was informed numerous times that the severance package was conditioned and contingent upon Martinez signing and returning the release. In her reply, Martinez does not dispute the fact that she did not return the release or contest the Fund's recitation of the facts, but argues that the Termination Memorandum was a "written agreement" in and of itself entitling her to severance pay.

When the Fund failed to honor the severance agreement under the Termination Memorandum, Martinez filed a wage claim for unpaid severance with the TEC under section 61.001 of the Texas Labor Code, also known as the "Payday Law." The TEC ruled that Martinez was entitled to severance pay under the Termination Memorandum because "there was no written contingency," therefore the oral condition was legally irrelevant and unenforceable.

The Fund sought judicial review by the District Court in Kleberg County claiming that the oral condition imposed by the Fund was an enforceable condition precedent to the formation of a written agreement for severance pay. TEC argued that the condition precedent contradicted the written terms of the Termination Memo and was therefore invalid. The trial court granted summary judgment in favor of the TEC.

## STANDARD OF REVIEW

### A. Trial court review

■ The trial court reviews a TEC decision by trial de novo. Act of May 2, 1991, 72nd Leg., R.S., ch. 159, § 3, 1991 Tex. Gen. Laws 766, 767, *repealed by* Act of May 12,

1993, 73rd Leg., R.S., ch. 269, § 5, 1993 Tex. Gen. Laws 987, 1273 (current version at TEX. LABOR CODE ANN. § 61.062(e) (Vernon 1995)); *Potts v. Texas Employment Comm'n*, 884 S.W.2d 879, 881 (Tex.App.—Dallas 1994, no writ). The burden is on the party challenging a TEC ruling to show that the ruling is not supported by substantial evidence.[1] *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986). It is for the reviewing court "to decide whether the evidence is such that reasonable minds could not have reached the conclusion the administrative body must have reached in order to justify its actions." *Haas v. Texas Employment Comm'n*, 683 S.W.2d 462, 464 (Tex.App.—Dallas 1984, no writ). The trial court only determines whether the TEC's decision is supported by substantial evidence. *Mercer*, 701 S.W.2d at 831.

### B. Appellate Court Review

When an appellate court reviews a trial court's granting of summary judgment, it applies the standards mandated by the Texas Supreme Court. They are:

1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.

2. In deciding whether a disputed material fact issue exists, we accept as true evidence favorable to the non-movant.

3. We indulge in every reasonable inference and resolve any doubts in the non-movant's favor.

*See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ The determination of whether the TEC's decision was supported by substantial evidence is a question of law. *Arrellano v. Texas Employment Comm'n*, 810 S.W.2d 767, 770 (Tex.App.—San Antonio 1991, writ denied). We review the TEC's decision against the evidence presented to the trial court and the governing law to determine whether the summary judgment evidence established as a matter of law that substantial

---

1. The Texas Supreme Court has held: "Although 'substantial evidence' must be more than a scintilla, it need not be a preponderance; in fact, the evidence may be substantial and yet greatly preponderate the other way." *Olivarez v. Aluminum Corp. of Am.*, 693 S.W.2d 931, 932 (Tex.1985).

evidence existed to support the TEC's decision. *Potts v. Texas Employment Comm'n,* 884 S.W.2d 879, 883 (Tex.App.—Dallas 1994, no writ).

## DISCUSSION

Section 61.001(7) of the Texas Payday Law defines "wages" as follows:

> (7) "Wages" means compensation owed by an employer for:
>
> (A) labor or services rendered by an employee, whether computed on a time, task, piece, commission, or other basis, and
>
> (B) vacation pay, holiday pay, sick leave pay, parental leave pay, or *severance pay owed to an employee under a written agreement with the employer or under a written policy of the employer.*

TEX. LABOR CODE ANN. § 61.001(7) (Vernon 1996)(emphasis added).

 The TEC presented evidence, and the Fund concedes, that the Termination Memorandum was a written notice of termination and severance pay, which said nothing about the condition placed upon the severance package. The Fund had no written personnel policy providing severance benefits to its employees but it did provide Martinez with a written agreement which clearly awarded her three months of severance pay. That agreement was conditioned only upon the return of "any and all equipment and documents"; Martinez complied with that sole condition.

The Fund argues that the release was a condition precedent to the formation of a written agreement by the parties. *Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976). Without satisfaction of that condition, the Fund argues, the agreement never existed and thus did not bind the parties. *See Baker v. Baker,* 143 Tex. 191, 183 S.W.2d 724, 728 (1944); *Rincones v. Windberg,* 705 S.W.2d 846, 848 (Tex. App.—Austin 1986, no writ).

 While the Fund is correct that oral conditions precedent are generally enforceable and can be proven by parol evidence, this general rule does not apply when the alleged condition precedent is inconsistent with the written instrument. *Baker,* 183

S.W.2d at 728. The written agreement here provided for the sole contingency that Martinez return any and all documents and equipment, but not that the release be signed. Thus, the release obstructs the operation of an otherwise clearly understandable written agreement.

In its hearing, the TEC ultimately concluded that

> Since written agreements and policies are the only binding criteria for severance pay to be considered wages, under the Texas Payday law, verbal severance agreements will be considered nonbinding.
>
> The record indicates that under the written severance agreement the claimant did not violate the contingency clause by failing to return equipment or documents to the employer. Therefore, the claimant will be entitled to payment of severance wages as defined under Section 61.001(7) of the Texas Payday Law.

We agree with the TEC's interpretation of the law, and conclude that there was substantial evidence for the trial court to uphold the TEC's decision. The judgment of the trial court is AFFIRMED.