•            •           • 
 • • •





MEMORANDUM OPINION

No. 04-09-00148-CV

CENTRAL TEXAS ORTHOPEDIC PRODUCTS, INC.,
Appellant

v.

Andrew ESPINOZA and Howmedica Osteonics Corp. d/b/a Stryker Orthopedics,
Appellees

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-12735
Honorable Karen Pozza, Judge Presiding



 
Opinion by:    Marialyn Barnard, Justice
 
Sitting:            Sandee Bryan Marion, Justice
                        Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed: December 9, 2009

REVERSED AND REMANDED
            Central Texas Orthopedic Products, Inc. (“CTOP”) brought suit against Andrew Espinoza
for breach of contract and breach of fiduciary duty. CTOP also sued Howmedica Osteonics Corp.,
d/b/a Stryker Orthopedics (“Stryker”) for tortious interference with Espinoza’s contract. After the
trial court granted partial summary judgment in favor of Espinoza and Stryker, a jury found in favor
of CTOP on its claim for breach of fiduciary duty, but awarded no damages. On appeal, CTOP
asserts the trial court erred in granting the partial motion for summary judgment in favor of Espinoza
and Stryker and in awarding attorney’s fees to Espinoza. We reverse the trial court’s judgment and
remand.
Background
            CTOP sells and services orthopedic implants. Espinoza began working as a sales
representative for CTOP in the fall of 2003. Espinoza signed a Confidentiality and Non-Competition
Agreement (the “Non-Compete Agreement”) in which CTOP promised to provide Espinoza with
confidential information and training in exchange for Espinoza’s promise not to disclose the
confidential information, compete with CTOP, or solicit any of CTOP’s customers for one year after
his employment with CTOP ended. After Espinoza signed the Non-Compete Agreement, CTOP
provided Espinoza with confidential information, including CTOP business and marketing plans,
customer and product lists, pricing information, financial information, sales volume data, and
product techniques. CTOP also provided Espinoza with private training information and sent him
to four annual National Sales Meetings where he received information about new products, existing
products, clinical trial results, and competitive strategies. 
            During the spring of 2007, Espinoza began looking for other employment with CTOP
competitors, including Stryker. In March and April of 2007, Espinoza met with Stryker
representatives several times and visited Stryker facilities, including Stryker headquarters in New
Jersey. 
            On August 14, 2007, Espinoza delivered a letter of resignation with a two-week notice to
CTOP. The next day CTOP told Espinoza to turn in his CTOP materials and supplies, and CTOP
changed the locks at the San Antonio office.
            On August 15, 2007, CTOP issued Espinoza a pay check for the gross amount of $12,999.30
for the pay period of August 1, 2007, to August 15, 2007. After August 15, 2007, Espinoza did not
contact CTOP again. CTOP, on the other hand, attempted to contact Espinoza several times to
collect $485.30 it believed Espinoza owed pursuant to their Compensation Agreement, which was
signed by Espinoza in June of 2007, and stated Espinoza promised to repay certain compensation
to CTOP if he resigned within six months of signing the Compensation Agreement. On August 20,
2007, CTOP sent Espinoza a termination of employment letter, outlining Espinoza’s contractual
obligations as set out in the Non-Compete and Compensation Agreements. 
            Thereafter, CTOP sued Espinoza for breaching the Non-Compete and Compensation
Agreements. It also alleged breach of fiduciary duty. Concomitantly, CTOP sued Stryker for
tortious interference with Espinoza’s contract. In response, Espinoza filed a counterclaim against
CTOP, alleging he was due additional compensation for late July and August commission sales in
the gross amount of $12,455.97, which included a deduction for the $485.30 owed to CTOP pursuant
the Compensation Agreement. 
            Espinoza and Stryker filed a joint traditional summary judgment motion on the following
grounds: (1) CTOP cannot recover on its claim relating to the Non-Compete Agreement because it
has unclean hands; (2) Espinoza is entitled to recover $12,455.97 for commissions due but unpaid
by CTOP; and (3) CTOP cannot recover on its tortious interference claim because it has unclean
hands.


 The trial court granted summary judgment in favor of Espinoza and Stryker. 
            CTOP’s breach of fiduciary duty claim proceeded to trial. The jury found Espinoza breached
his fiduciary duty to CTOP, but awarded no damages. The trial court later entered a final judgment,
incorporating the summary judgment, and awarded Espinoza $12,455.07 in unpaid compensation
from CTOP, and $15,000 in attorney’s fees for trial, interest, and costs. CTOP appeals, claiming the
trial court improperly granted: (1) Espinoza’s motion for summary judgment on CTOP’s breach of
contract claim; (2) Espinoza’s motion for summary judgment on Espinoza’s counterclaim for breach
of contract; and (3) Stryker’s motion for summary judgment on CTOP’s tortious interference with
contract claim. In its last issue, CTOP asserts the trial court erred in awarding attorney’s fees to
Espinoza. Standard of Review
We review a trial court’s order granting a traditional summary judgment motion de novo. 
Mid-Century Ins. Co of Texas v. Ademaj, 243 S.W.3d 618, 621 (Tex. 2007). To be entitled to an
order granting a traditional summary judgment motion, the movant bears the burden of showing no
genuine issue of material fact exists, and it is, therefore, entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c). A matter of law is conclusively established if reasonable minds cannot
differ as to the conclusion to be drawn from the evidence. Allbritton v. Gillespie Rozen, Tanner &
Watsky, P.C., 180 S.W.3d 889, 891 (Tex. App.—Dallas 2005, pet. denied). In reviewing an order
granting a traditional summary judgment motion, we indulge every reasonable inference in favor of
the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor
of the nonmovant. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). 
Discussion
A. CTOP’s Breach of Contract and Tortious Interference Claims
            In its first and third issues, CTOP argues the trial court erred in granting Espinoza’s and
Stryker’s motion for summary judgment on the breach of contract and tortious interference claims
based on the contention that the Non-Compete Agreement is unenforceable under the clean hands
doctrine. According to CTOP, to the extent the clean hands doctrine would have invalidated the
enforceability of the Non-Compete Agreement, the clean hands doctrine is superseded by the
Covenants Not to Compete Act (“the Act”). See Tex. Bus. & Com. Code Ann. § 15.52 (Vernon
2002). CTOP argues the Act expressly preempts common law actions to enforce a covenant not to
compete, and therefore, as a common law principle, the clean hands doctrine is expressly preempted
by the Act. See id. 
            Espinoza counters that the Act does not preempt the equitable principle of clean hands. 
Espinoza argues the preemptive provision in the Act does not apply to equitable principles, such as
the clean hands doctrine. Accordingly, the Act has no impact on the application of the unclean hands
doctrine to the enforceability of the Non-Compete Agreement. We need not decide whether the
statute preempts the application of the unclean hands doctrine with respect to the enforceability of
the Non-Compete Agreement. Espinoza did not establish that CTOP had unclean hands as a matter
of law. 
            According to Espinoza, CTOP had unclean hands because CTOP failed to pay him
$12,455.97, his earned commissions for sales made during late July and August 2007. Espinoza
argues he established CTOP’s unclean hands as a matter of law because: (1) CTOP’s July 2007
commission records document a net balance of $12,455.97 owed to Espinoza for sales; (2) the
deposition and other testimony of CTOP’s president, Paul Eichler, prove Eichler instructed CTOP’s
office manager, Sharon White, to withhold any monies that might have been due Espinoza after
August 15, 2007; and (3) White’s deposition established no check was issued to Espinoza pursuant 
to Eichler’s instructions. 
            The clean hands doctrine is an equitable affirmative defense that requires a party seeking
equity to come to court with clean hands. Dunnagan v. Watson, 204 S.W.3d 30, 41 (Tex.
App.—Fort Worth 2006, pet. denied); Adams v. First Nat’l Bank of Bells/Savoy, 154 S.W.3d 859,
876 (Tex. App.—Dallas 2005, no pet.). “Equitable relief is not warranted when the plaintiff has
engaged in unconscionable, unjust, or inequitable conduct with regard to the issue in dispute.” 
Dunnagan, 204 S.W.3d at 41; see also Flores v. Flores, 116 S.W.3d 870, 876 (Tex. App.—Corpus
Christi 2003, no pet.) (“The doctrine applies against a litigant whose own conduct in connection with
the same matter or transaction has been unconscientious, unjust, marked by a want of good faith, or
violates the principles of equity and righteous dealing.”). However, the trial court cannot apply the
unclean hands doctrine unless “the misconduct at issue is connected to the subject of the litigation
and the party asserting the defense has been seriously harmed by the misconduct.”Afri-Carib Enters.,
Inc. v. Mabon Ltd., 287 S.W.3d 217, 222 (Tex. App.—Houston [14th Dist.] 2009, no pet.); Flores,
116 S.W.3d at 876; Lazy M Ranch, Ltd. v. TXI Operations, LP, 978 S.W.2d 678, 683 (Tex.
App.—Austin 1998, pet. denied) .
            Here, the disputed issue concerns the enforceability of the Non-Compete Agreement. 
However, CTOP’s alleged failure to pay Espinoza did not grow out of obligations outlined in the
Non-Compete Agreement. Rather, the only contract from which CTOP’s obligation to compensate
Espinoza could arise is the Compensation Agreement. Because “the doctrine of unclean hands does
not apply when a party is guilty of inequitable conduct with regard to a transaction separate from
the one in dispute,” Espinoza cannot establish that CTOP had unclean hands as a matter of law based
on the contention that CTOP failed to pay Espinoza pursuant to the Compensation Agreement. See
Lazy M Ranch, Ltd., 978 S.W.2d at 683. Therefore, because CTOP’s alleged inequitable conduct
with regard to the Compensation Agreement is separate from the issue in dispute, we hold Espinoza
did not establish CTOP had unclean hands as a matter of law. See Afri-Carib Enters., Inc., 287
S.W.3d at 222; Flores, 116 S.W.3d at 876; Lazy M Ranch, Ltd., 978 S.W.2d at 683. 
            Accordingly, the trial court abused its discretion in granting the summary judgment motion
with regard to CTOP’s claim that Espinoza breached the Non-Compete Agreement. 
B. Espinoza’s Counterclaim for Breach of Contract 
            In its second issue, CTOP argues the trial court erred in granting Espinoza’s motion for
summary judgment on Espinoza’s counterclaim for breach of contract. CTOP asserts Espinoza was
not entitled to be paid any additional compensation because Espinoza breached his fiduciary duty
by disclosing confidential information to Stryker. 
            In his motion for summary judgment, Espinoza claimed CTOP breached its contractual
obligation to him and violated the provisions of the Texas Payday Act (“Payday Act”) by failing to
pay him commissions he was owed. Espinoza contended he was entitled to a judgment of
$12,445.97 for commissions due and unpaid for sales made during late July and August 2007. 
            Under the Payday Act, an employee may seek wages from an employer by pursuing either
judicial action against the employer or seeking an administrative remedy as prescribed by the Act. 
Tex. Lab. Code Ann. § 61.051(a) (Vernon 2006) (“An employee who is not paid wages as
prescribed by this chapter may file a wage claim with the commission.”) (emphasis added); Igal v.
Brightstar Information Tech. Group, Inc., 250 S.W.3d 78, 82 (Tex. 2008) (providing that Act gives
employee option of filing in court or with Texas Workforce Commission); Hull v. Davis, 211
S.W.3d 461, 464 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The objective of the Payday Act
is to discourage employers from withholding wages from employees by providing employees an
avenue to enforce wage claims. Wal-Mart Stores, Inc. v. Lopez, 93 S.W.3d 548, 561 (Tex.
App.—Houston [14th Dist.] 2002, no pet.).     Section 61.001(7) of the Texas Payday Law defines
“wages” as including “compensation owed by an employer for . . . services rendered by an employee,
whether computed on a time, task, piece, commission, or other basis.” Tex. Labor Code Ann.
§ 61.001(7) (Vernon 2006). 
            In this case, Espinoza opted to pursue his claim for unpaid wages by filing a counterclaim
against CTOP. See Tex. Lab.Code § 61.051(a); Hull, 211 S.W.3d at 464; Igal, 250 S.W.3d at 82. 
Accordingly, we must determine whether Espinoza proved he was entitled to wages under the Texas
Payday Act as a matter of law. See Tex. R. Civ. P. 166a(c). 
            Espinoza presented evidence that he worked for CTOP as a sales representative, selling
orthopedic implants to surgeons and hospitals until his resignation on August 15, 2007. In his
affidavit, Espinoza states that the last payment he received from CTOP was on August 15, 2007, for
the gross amount of $12,999.30, and he believed CTOP still owed him $12,455.97 for sales made
in late July and August 2007, taking into account a deduction of $485.30, which represents the
amount he agrees he owes CTOP in repayment of a commission bonus pursuant to the Compensation
Agreement. In addition to Espinoza’s affidavit, the record reflects the parties entered into a
stipulation, wherein both parties agreed that the calculations included in Espinoza’s motion for
summary judgment, and which provide the basis for the motion for summary judgment “are accurate
and are correctly based upon the commission records that are being withheld [by CTOP].” 
            Given the parties’ stipulation as to the accuracy of Espinoza’s calculations and CTOP’s
failure to challenge the amount of Espinoza’s wage claim in its response, Espinoza’s summary
judgment evidence is sufficient to show as a matter of law that Espinoza was due $12,455.97 in
wages on August 31, 2007, pursuant to his Compensation Agreement. See New Boston General
Hosp., Inc. v .Texas Workforce Com’n, 47 S.W.3d 34, 38 (Tex. App.—Texarkana 2001, no pet.)
(holding verified affidavits from employee and her employers as well as tape-recorded conversation
between employee and employer regarding commission agreement constituted substantial evidence
to sustain employee’s wage claim); Texas Workers’ Comp. Ins. Fund v. Texas Employment Com’n,
941 S.W.2d 331, 334 (Tex. App.—Corpus Christi 1997, no pet.) (providing employee’s
documentation of company’s written agreement providing severance pay sustained her entitlement
to severance pay pursuant to Payday Act).
            Although CTOP did not challenge the amount of wages Espinoza claimed he was unpaid in
its summary judgment response, CTOP did challenge whether Espinoza was entitled to payment of
any wages. CTOP asserted Espinoza was not entitled to payment because he breached his fiduciary
duty to CTOP. 
            Fee forfeiture is appropriate in cases where an employee breaches his fiduciary duty to his
employer. See Burrow v. Arce, 997 S.W.2d 229, 239 (Tex. 1999) (“Texas courts of appeals, as well
as courts in other jurisdictions and respected commentators, have also held that forfeiture is
appropriate without regard to whether the breach of fiduciary duty resulted in damages.”). Kinzbach
Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 572, 160 S.W.2d 509, 513 (requiring employee-agent to forfeit secret commissions received from conflicting interest). According to the
Restatement: 
An agent’s breach of fiduciary duty is a basis on which the agent may be required to
forfeit commissions and other compensation paid or payable to the agent during the
period of the agent’s disloyalty. The availability of forfeiture is not limited to its use
as a defense to an agent’s claim for compensation.
 
Restatement (Third) of Agency § 8.01, cmt. d.2. 
            CTOP presented evidence in its response that Espinoza disclosed confidential information
to CTOP’s competitor, Stryker. In his deposition, Tim Waldrop, a Stryker manager, testified
Espinoza met with Stryker representatives several times in March of 2007. During these meetings,
Espinoza discussed his salary and how much product he was selling for CTOP. He also disclosed
customers with whom he interacted, and indicated these customers would come with him if he left
CTOP. Waldrop and Bryan Books, a CTOP co-worker who also met with Stryker, further confirmed
that Espinoza met with Stryker employees in April of 2007. At this meeting, Espinoza gave Stryker
information that CTOP’s customers preferred using a metal-on-metal hip product offered by CTOP,
but was not currently offered by Stryker. Lastly, Ryan Velasquez, another CTOP employee, stated
in his deposition that Espinoza called him on August 15, 2007, and said he was leaving CTOP and
taking “all of his doctors” with him. Velasquez indicated Espinoza tried to convince Velasquez to
leave as well. 
            Because a party’s breach of fiduciary duty may forfeit that party’s right to earned
compensation, we hold CTOP raised a genuine issue of material fact with regard to whether
Espinoza breached his fiduciary duty, and therefore whether Espinoza is entitled to compensation. 
See Burrow, 997 S.W.2d at 239; Kinzbach Tool Co., 160 S.W.2d at 514-15. Accordingly, the trial
court abused its discretion in granting summary judgment on the compensation issue. 
            Given that we reverse the trial court’s judgment on Espinoza’s breach of contract claim
against CTOP, there no longer exists a basis upon which we can sustain an award of attorney’s fees.                                                                        Conclusion
            Based on the foregoing, we hold the trial court abused its discretion in granting partial
summary judgment in favor of Espinoza and Stryker. The trial court also erred in awarding
attorney’s fees. Accordingly, we reverse the trial court’s judgment and remand for further
proceedings in accordance with this Court’s opinion. 
 
Marialyn Barnard, Justice